## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ERNEST TYNDALE,                                          *

    **Plaintiff,**                     *

    **v.**                             *                    **CIVIL NO. JKB-23-1292**

SECRETARY, DPSCS, et al.,                                *

    **Defendants.**                     *

    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. For the reasons that follow, the Defendants' Motion, construed as a motion to dismiss, will be granted.

### I.    Background

Plaintiff Ernest Tyndale is an inmate incarcerated at Jessup Correctional Institution ("JCI"), and he filed suit against Department of Public Safety and Correctional Services ("DPSCS") Secretary Robert Green, Chaplain Anton Westley, Warden Cleveland Friday, and Administrative Officer Sandra Holmes. (ECF No. 5.) He alleges that his Eighth and Fourteenth Amendment rights were violated on two occasions. (*See* ECF Nos. 5, 10.)

Tyndale alleges that, on April 19, 2021, he was denied the opportunity to make an international bereavement call when his stepmother passed away. (ECF No. 5.) He alleges that his request to make the call was denied by Chaplain Westley, despite a prison manual stating that the chaplain "shall notify the offender and arrange a call" when there is a death in the family. (*Id.* at 4.) He explains that when his sister passed away, he was permitted to make a phone call. (*Id.* at 5.) Tyndale alleges that he filed a complaint with Warden Friday, which was dismissed, and

that his appeal to the Commissioner was dismissed as untimely. (*Id.* at 5.)  He explains that he filed an Inmate Grievance Office ("IGO") complaint, which was also dismissed. (*Id.*; ECF No. 5-4 (IGO decision letter signed by Holmes denying relief).)  He explains that he experienced "emotional stress and depression, could not sleep or eat for a while." (ECF No. 5 at 5.)

Tyndale also alleges in a supplement to his Amended Complaint that in March 2023, he was not permitted to watch his mother's funeral service via a live stream on the internet (ECF No. 10.)  He alleges that on March 10, 2023, he sought approval to view her funeral service, and that on March 15, 2023, "Capt. Harcum at JCI informed [Tyndale] that Maj. Shaw at JCI told him that [Tyndale] would be able to view [the] memorial service on his assigned tablet." (*Id.* at 3.)  On March 16, 2023, Tyndale "went to Chapl[a]in Settles to confirm with Maj. Shaw through an email. Chapla[i]n Settles was not aware of the police or procedure for the viewing of [the] funeral." (ECF No. 10-2 at 3.)  Although the circumstances are not entirely clear, it appears that Tyndale was not permitted to live stream the funeral, and he was told that he could ask his family for a recording of the funeral instead. (*See, e.g.*, ECF No. 10-2 at 18.)  However, because his family believed that he would be able to watch the memorial service live, they did not record it, nor did the funeral home. (ECF No. 10 at 4.)  He alleges that he was "so hurt and disappointed that he could not view his beloved mother's memorial service." (*Id.* at 3.)  He also alleges that in June 2023 another inmate was permitted to watch his mother's funeral during a "video visit." (*Id.* at 4.)  He alleges that "Defendants advanced that live streaming presents a security risk to the prison" but that this is "contrary to the facts." (*Id.*)

## II.    Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the

plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

The Court construes Tyndale's claims as 42 U.S.C. § 1983 claims alleging violations of the Eighth and Fourteenth Amendments. Tyndale fails to sufficiently allege either.

"The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials" including "maintaining humane conditions of confinement." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citation omitted). "To succeed on an Eighth Amendment claim, a prisoner must show that the prison official acted with a sufficiently culpable state of mind (subjective component) and the injury inflicted on the inmate was sufficiently serious (objective component)." *Brown v. Brock*, 632 F. App'x 744, 746 (4th Cir. 2015) (citations, quotations, and alterations omitted). While the Court is "guided by contemporary standards of decency in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim," the Court is mindful that "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

3

Although the Court does not minimize Tyndale's experience, disallowing him from making an international bereavement call in the wake of his stepmother's passing or livestreaming his mother's memorial service does not amount to a sufficiently serious harm to satisfy the objective component. Indeed, "[t]o be sufficiently serious, the deprivation must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from exposure to the challenged conditions." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (citation, internal quotations, and alterations omitted). Although psychological harm may be sufficiently serious, Tyndale alleged harms of "emotional stress and depression, could not sleep or eat for a while" and being "hurt and disappointed" (ECF No. 5 at 5; ECF No. 10 at 3), simply do not rise to the level required to allege a sufficiently serious harm. Further, even assuming that it did present a sufficiently serious harm, the subjective component of an Eighth Amendment claim "is a demanding standard." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). Here, the Amended Complaint and supplement are devoid of allegations that allow for a plausible inference that any prison officials acted with a sufficiently culpable state of mind in disallowing from making the phone call or viewing the memorial service.

With respect to Tyndale's Fourteenth Amendment claim, it is not clear what his theory is. However, the Court presumes that he makes an equal protection claim, given his allegation that another inmate was permitted to watch a video of his mother's funeral. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether

4

the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Tyndale fails to sufficiently allege an equal protection claim. He attaches to his supplement a document that reflects that the other inmate was permitted to watch a recording of his mother's funeral. (ECF No. 10-2 at 8.) This is precisely what Tyndale alleges the prison told him he was permitted to do. (*See* ECF No. 10 at 4.) The Court recognizes that Tyndale alleges that there was, in fact, no recording of Tyndale's mother's memorial service. (*See id.*) However, the Court cannot conclude based upon these facts that Tyndale was treated differently from any other inmate. Moreover, to the extent that he was treated differently, Tyndale does not plausibly allege that any unequal treatment was the result of intentional or purposeful discrimination.

In addition, in a § 1983 case, "the plaintiff . . . must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("Because vicarious liability is inapplicable to [] § 1983 suits . . . the plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." (citation omitted).) Further, to state a claim for supervisory liability under § 1983, a plaintiff must allege: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citation omitted). Tyndale fails

5

to make sufficient allegations against any of the Defendants here. For that reason too the case must be dismissed.

## IV.    Conclusion

For the foregoing reasons, it is ORDERED that:

1. The Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21), construed as a motion to dismiss, is GRANTED;

2. Tyndale's Amended Complaint is DISMISSED;

3. The Clerk is DIRECTED to MAIL a copy of this Memorandum and Order to Tyndale; and

4. The Clerk is DIRECTED to CLOSE this case.

DATED this 6 day of February, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

6